Good morning. Good morning. Joe Littlecock on behalf of Pellan, Robert Goldberg. Two weeks ago I thought there were going to be two issues involved in this matter, and the first issue seems to have been resolved in that Ford matter, Ford v. I believe the name of it is Ford v. MCI long-term disability plan. And the first issue I thought would be whether there is a cause of action, whether Hartford is a proper party under the fiduciary equitable relief cause of action under ERISA. And just last week there was a published opinion involving the same plan with a lawsuit for the same cause of action, breach of fiduciary duty, for seeking other equitable relief against the plan and against Hartford. And this court found that Hartford is not a proper party. Hartford resisted it and said it's just the opposite of what it's doing here. And I think that pretty much resolves that issue. There remains just one other issue then. And that other issue is, is the insurance policy a summary plan description? Does that depend on whether it contains the elements required of a summary plan description or is your position just a flat-out it can't be no matter what? No, my position is not a flat-out it can't be no matter what. My position is very simple. It says in the statute what it has to have, and it has to have all 12 elements. This court said it showed all 12 elements. The statute says it shall. It's very insistent. I think it says at least once, twice, perhaps even three times. It shall. And it doesn't say anything compromising that. Furthermore, there's other statutes that govern what the plan must have. The plan must have, including other things, it must have provisions that say how you amend a plan and who has authority to amend the plan. This document is not a summary plan description. It's not a plan. Every plan must be managed and governed according to a written plan instrument. This is an insurance policy. There is nothing on it that says it's offered by the plan or anything like that. It is written by the insurance policy issued to the plan. It's like your homeowner's liability policy. You bought an insurance policy. Does that become your written instrument upon which you govern your liability to other people who step onto your property? It isn't. It should be a written instrument. Now, if we look back at 1132. Which of the elements do you claim it's missing that are required of a summary plan description? Well, for one, there is not a description of the, it doesn't identify the plan administrator. It doesn't have the addresses. It doesn't have the EIN employee information number. It doesn't have, I believe I wrote in my brief all of it, but it doesn't have that. On the top of my head, if you want me to go back on my second go around, I will detail it all. But it certainly doesn't list who has authority to amend the plan. It certainly doesn't say provisions for amending the plan. Now, your client already got what? I'm sorry. Your client already got $14,000 on the policy. Is that correct? We settled for, I believe it was $15,000. $15,000. What? I'm sorry. I'm not hearing you very well. I'm sorry. So since he already recovered on that, why should we allow him to recover again? Well, it's not a double recovery. It was a volunteer. We had no cause of action against them. They were not a proper party. We had nothing. I don't know why they settled with us. They decided to give us money. It was not, you know, they made the decision. They intervened. We weren't suing them. We weren't saying they were a proper party. We don't have a cause of action against them. Well, what does that money represent? Does it represent benefits? I'm sorry? Does that money represent benefits? The money represents a settlement that has nothing to do with benefits because we were suing them for benefits, not the insurance company. The insurance company intervened. We always said, we said at the very beginning, we do not, you're not a proper party. We have no cause of action against you. What did they agree? I mean, as an insurer, what, the insurance policy was a policy to give benefits to people. Yes, it was an insurance policy to the plan. For benefits. To pay for benefits owed by the plan. Okay. We weren't making a settlement for benefits here. What was it for? What? What was it for? It was for. Well, it's not like it was a lotto win or something like that. It's not like it was a lotto win. It had something to do with this lawsuit, right? It had something to do with the lawsuit and that was about it. So it's sort of a nuisance value. They came in and they said, okay, here's 15,000 just nuisance. The settlement, that has nothing, that has very little relationship to the amount of benefits that are actually owed. And there is, I don't recall the settlement agreement being part of the appellate record. If it was necessary, I would have included it. But I think from what I recall, the settlement agreement said this has nothing to do with the larger cause of action. What did it have to do with? It had to settle whatever they were intervening on, which was not a viable cause of action. How can you settle on a, it's not raised judicata. It didn't settle the cause of action I had with them. The conceptual problem. There is nothing in the settlement agreement that says I settled with them. I gave a party who intervened, they gave me some money and said, okay, the trial that was scheduled against you, which I don't think I have a cause of action against, has now been resolved. My remaining cause of action is against them. Let me turn to that. Let me turn to that and ask you a question, please. Sure, I'm sorry. The conceptual difficulty that I have with your case is the following. Yes, go ahead. There is an exclusion for preexisting conditions. Yes. There is a preexisting condition. In the insurance policy. Right. And the plan is not self-insured. The plan gives benefits by whatever it chooses to purchase. And it has chosen to purchase something that excludes your client's condition from receiving benefits. I don't think so. And you don't think so because why? Well, first of all, if we want to go on to the exclusion itself. That's my problem with your case is it appears to me that there is a clear exclusion and that your client would simply be receiving a windfall that no one has paid for. I mean, that's distinct from whatever penalty might be due for failure to, you know, jump through the hoops on a summary plan description. Maybe they didn't jump through those hoops, but I don't see why that, if so facto, turns into benefits to which your client is not otherwise entitled. That's my problem with your case. Okay. There's two problems with that. Actually, three problems with that. Number one, there's a short-term insurance policy also issued by Hartford that has the same exact exclusion. If that exclusion was applicable, why did they pay him short-term benefits? That's number one. Number two, the exclusion. Probably the same reason they gave you $15,000 they didn't need to give you. Who knows? They didn't give me anything. I'm sorry. Go ahead. I'd like to get back to this issue. Okay. You have three problems with my scenario. That was the first one. Let me just address one at a time. I apologize. I don't mean to be taking over your question, but I have a short-term memory that doesn't quite make it a long-term memory, so I need to address one issue at a time. I really don't mean to offend you. You're not. Go right ahead. Thank you. Number one, just focusing on the insurance policy. First of all, somehow that exclusion doesn't apply during the short-term when there's the same exclusion. Number two, the exclusion applies to, I believe it's accidental injury. He didn't have an accidental injury. Number three, they apply this exclusion when he returns to work. He's already been covered under the plan because he's been employed by them for several years already. So I don't think that exclusion in the insurance policy, if you want to lay into it, rely on the insurance policy, I don't think that exclusion applies. I didn't understand the last thing that you were saying about his return to work. I didn't understand what that was. Well, he took some time off, right? He took time off. You know why he took time off? Because he was out on disability and he was being paid benefits under the plan, and he returned to work. He was trying to get back to work. So he's employed. But there's a period of time before the policy kicks in, right? And there's a period of time that they look to for the exclusion, right? Yes. But the policy exclusion, I'm making two arguments. Number one, if they now redefine it to the exclusion applying to when you take off from work because of disability, then return to work, well, then they've just changed the exclusion that was under the policy that he originally left under, the LENA policy, because he was being paid under that. And he's no longer on disability, and now he returns to work. And it goes out again, and he hasn't. Well, but I guess if we can't infer what the $15,000 was paid for, we can't, or Liner or whatever they call that. Sometimes policies do pay because they don't want to be sued in terms of, and then they ultimately determine that they'll pay short-term, but they won't pay long-term. We can't really infer why LENA paid them, right? I mean, you're telling us just because he was being paid, then you want us to assume that he, therefore, was eligible, right? Well, I would submit that by ERISA regulation, they have to operate by the terms of the plan, not by some sort of calculus as to litigation calculus. It's by the terms of the plan. And frankly, under ERISA, if they've got exclusion that applies, why bother? Very few ERISA attorneys out there, very few ERISA cases win. Play the litigation lotto. You've got every advantage under ERISA, if you're representing the plan, to go ahead and let them file a lawsuit. The likelihood of winning is so small, so very small, and you have to draw a line in the sand. Truce companies are happy to do that, especially under ERISA. It's not a bad faith case. It is not a bad faith case. What do they have to lose? Maybe some benefits and maybe a little bit of insurance, attorney fees, and that's it. They have every advantage to go forward with it. So it can't be that. It really can't be that. Plus, they have an obligation under the law to apply, to operate under the terms of the plan and no other calculus. That would be a breach of fiduciary duty. But what I really want to go back to is my central theme here, is that, all right, let's look at the exclusion. I don't think it's applicable. And besides, that was going to go to the trial. It hasn't gone to trial yet, that issue. The question here is, what documents control the benefits? Now, I brought an ERISA action, benefits action. And that says, the benefits action says, I am suing for benefits under the plan. Under the plan. Not the insurance policy issued to the plan, but benefits under the plan. So the question is, what are the benefits this plan has to offer? Well, we know by statute that the plan has to be by a written instrument from the employer or the employee organization. Well, this is not a written instrument by the employer or employee instrument. This is an insurance policy from Hartford. Counsel, I think we understand your main argument. You have about a minute left if you want to save it for rebuttal. Yes, I have a minute left. I'm sorry. I don't mean to take you too much more time. Here's my concern. The courts have made a marvelous job preempting state law. Now, as written in dissent in Davila, I think it's Aetna versus Davila, the U.S. Supreme Court dissent. I'm sorry. It's a concurrence written by Ginsberg and joined by Judge Breyer. Notes that we've made a really, you've done a marvelous job in preempting state law. But there's been a void created, a regulatory void created, which has created much confusion. But guess who's now stepped into the void? The insurance company. Now, ERISA not only preempts state law, but also has certain laws and regulations in there that says the insurance company can't jump in and just create anything they want to create and say this is insurance, this is a plan, and that is not the plan. And we could do anything else we want. We could change our opinion as to whether you can sue us or not sue us. It says you have to have a plan and you have to administer it according to the terms of the plan. All I'm asking at this time is for the court to begin to impose the same regulatory straights on the insurance company under the laws in ERISA that they've already imposed under state laws. Counsel, you've more than used your time, and I do think we understand your position. I appreciate it. I apologize. We understand your position. Thank you for your time. You're welcome. Thank you. We'll hear now from Mr. Meehan. Good morning, Judge Callahan, Judge Graber, Judge Breyer. Let me cut to the chase on some of the issues that were raised on behalf of Appellant Mr. Goldberg. As to Hartford, I congratulate counsel for receiving $15,000 for nothing. Regardless of how the payment is characterized, there is no dispute that there was a general release of all known and unknown claims with respect to Hartford, with respect to any of its acts or omissions, including a waiver. That's fine. I don't see how that helps you, though. It seems to me, I mean, my problem with your half of the case is I don't see how the claim against you is affected at all by the, because you are the plan administrator, and it's kind of a so what that Hartford's no longer there. I agree, Your Honor. Hartford is a so what as to our case. I simply say that it is a so what for the additional reason that it has entered into a general release and it's not a party to disappeal. Correct. So with all due respect to Appellant, the arguments regarding Hartford are, in the words of the court, a so what. Well, then, if you're the plan administrator, and I think what the district judge did, then dismissed you, how did that justify Appellant's dismissal of Appellant's plans for benefits against your clients? Because under the terms of the plan, and I'll address later on that this document is a plan that complies with ERISA in all aspects, but under the terms of the plan, the duties of the plan administrator can be shared with the insurance carrier, can be shared with Hartford. And in this record, there is no dispute that the plan administrator here looked at the preexisting condition exclusions of the plan. The plan had the appropriate firestone language conferring the abuse of discretion standard, and that the standard, when applied to the plain language of the plan, shows that this type of claim was properly excluded. But counsel, isn't that premature? I mean, that's not the ground that the district court used reaching the merits like that. It may not be exactly what the district court said. Well, it's not even slightly what the district court said as I read it. I mean, I may be reading it differently than you do, but it seems to me that the dismissal was tied to the Hartford settlement rather than to the merits of the exclusion and what it means and how it applies. Well, the court did grant summary judgment as to all the causes of action for my client, the plan. Well, see, I guess I think what we're struggling with here, and I can't really speak for my colleagues, but I just I'm sort of picking up on what Judge Graber said, that if you shouldn't have been dismissed on the basis that the district court dismissed you, but then what you're essentially I think you're asking us to review it on the merits here, why isn't it more appropriate if you shouldn't have been dismissed to go back to the district court and have the district court review it on the merits and make that determination? Because you're asking us to say, well, there's an exclusion, right? Yes. All right. And so why isn't that more appropriate? And then also, if we were to say, OK, you shouldn't have been dismissed, but we'll review it on the merits anyway, what do we review here? The district court first did dismiss the plan on summary judgment and did issue findings of fact and conclusions of law. If those are reviewed de novo by this court, still looking at the language of the plan, which is not in dispute, looking at whether Mr. Goldberg had a preexisting medical condition, which is not in dispute, looking at the timing of his condition and the timing of the claim for benefits, which is not in dispute, and looking at the... I sort of heard him, I sort of heard the other side say it was in dispute about whether he had a preexisting condition. I'm not hearing them concede that. Well, they have in their second amended opening brief, Your Honor, and they have in all of their papers filed in connection with the summary judgment. Mr. Goldberg... Sorry, you say that they've said that there are no disputes of facts? They have said that Mr. Goldberg has a preexisting medical condition that if the language of the plan did apply, would exclude this condition. It was a condition that he sought medical treatment for within 90 days of becoming eligible for coverage on the plan. They don't dispute the date of the injury. They don't dispute the timing of the medical coverage sought for the injury, and don't dispute that under those facts it would fall within the preexisting exclusion. They merely say that we don't think that this exclusion should apply because it wasn't in a document that had a cover page that said summary plan description. But they don't dispute, Judge Breyer, the underlying facts of what the condition was when treatment was sought and the language of the plan document. So, returning to your question, Judge Callahan, if there is a de novo review, it would have to lead to the same conclusion, I believe already drawn by the district court, that there is an exclusion for this type of claim under the plain language of the plan itself. What did the district court say in that regard? I thought they didn't really address it. I thought that they dismissed you. They granted summary judgment. And it was not a grant of partial summary judgment. It was a grant of summary judgment as to each of the causes of action. And, therefore, the district court did necessarily make a finding that we were. You're saying it's implied in their finding. Well, it's more than implied, Your Honor. If we move for summary judgment rather than partial summary judgment, and the district court grants summary judgment, that per se means that they are ruling on each cause of action. But having arguably made a mistake in the first instance about whether or not you're a party, isn't that correct? I mean, that's one of the issues, right? That was an issue that Hartford raised, yes. It seems, though, they're trying to make, they're distinguishing between the plan and the long-term policy. Am I, was I hearing that? They're saying the plan's different than the long-term policy exclusion. That's the argument that appellant is making, and we have said that. And it seems to me that maybe the district court addressed the long-term policy exclusion relative to Hartford. It did address it relative to Hartford, but it also in its findings of fact found that this document, whether you want to call it a policy or a plan or a summary plan description, did include in whatever iteration looked at a exclusion for a preexisting condition. You know, I'm troubled by the fact that you keep referring to findings of fact, because on summary judgment the court isn't supposed to make findings of fact, as distinct from dealing with undisputed facts. And you seem to sort of equate there are some undisputed facts and there are some findings of fact, and I'm a little confused as to what you're trying to tell us. I'm referring to the district court's findings that the LINA language and the Hartford language were, in the words of Judge Collins, virtually identical, and that the exclusion, whether referred to as a policy or a plan or an SPD, did exclude this type of claim. And the district court did look at the language of this exclusion itself and make a determination that this language did exclude this type of claim. Does that answer the question? Yes, it does. You can continue. Turning then to the argument of there was no summary plan description, I refer to ERISA itself and the section quoted by appellant at page 11 of his second amended opening brief, which says that ERISA requires welfare benefit plans to be established and maintained pursuant to a written instrument, and that's 29 United States Code section 1102A1 and 1102B. There is nothing in the statute or the related case law that says that operation of the plan, based on a written instrument, has to be either an insurance policy or a certificate of insurance or the underlying plan document or the summary plan description. The summary plan description requirement, again quoted by appellant at page 11 in his second amended opening brief, is an additional obligation of the plan to provide employees with a description of what benefits are covered and not covered and how to make a claim and who to send it to, and those 12 elements have been described by this court in the Peixota case. The court asked appellant's counsel to identify which of the 12 elements of the summary plan description were missing, and appellant wasn't able to do so. Well, he mentioned several. He mentioned the identity of the plan administrator and the number, who can amend the plan, the employee identification number. He mentioned several that he asserts are missing. Without any reference to the record and without any reference to the document itself that he says is missing those terms. The appellant certainly had the documents necessary to make the claim because he attached the document as an exhibit to his civil complaint, and he also made an administrative claim under the plan, sent it to the right address, and had the claim denied. And so there was no, or there can be no argument that appellant was not aware of what to do under the plan in order to make a claim, and as this court has repeatedly held in the cases that we have cited beginning at page 29 of our brief, where, as in this case, there is no prejudice to the plan participant, then any of these alleged procedural irregularities do not change the entitlement to benefits. Mr. Goldberg had this condition no matter what an SPD said, no matter what a plan said, no matter what an insurance policy said. He could not reverse his medical condition based on the way in which the exclusion was communicated or the document under which it was communicated in. There is no prejudice, no prejudice even argued on behalf of appellant as to how the failure to provide a summary plan description in any way would have changed his right to benefits. If the court were to assume hypothetically that the summary plan description had the same language with the exclusion, and it would have to because summary plan descriptions cannot conflict with the written instrument that is the plan under ERISA section 1102, then Mr. Goldberg would still be excluded from coverage under the preexisting language. And as this court held in the McKenzie case, and that's 41 after at pages 1315 through 1316, there is no triable issue of fact regarding any substantive harm when a plan participant does not receive a summary plan description where the plan participant is informed of or aware of the applicable standards under the plan. Looking at the denial itself, and I realize I only have a minute or so left. All right. If we decided to review your client's claim here, what's the standard of review? The standard of review would be under the Firestone standard arbitrary and capricious regarding the decision to deny benefits, and, of course, the standard of review for summary judgment would be de novo. But we have argued that because the plan vests the administrator with discretionary authority, the appropriate standard of review of the plan administrator's decision is the arbitrary and capricious standard or abusive discretion standard, and as this court has held, those two terms mean the same thing and they are, in the language of the Ninth Circuit, a distinction without a difference. There being no further questions, thank you. Thank you, Your Honor. Mr. Ribicoff, you did exceed your time in opening, but we allow Mr. Muir to go over as well. Would you care to have a minute for rebuttal? And I do have a question for you. Assuming for the sake of this question that we conclude that the dismissal of WorldCom was improper, the opposing counsel has argued that we should go ahead and look at the summary judgment on the merits because we have the record and there aren't any factual disputes in terms of what the policy said and that sort of thing. What is your response to that argument? My response is that there are factual disputes, and that's why summary judgment as to Hartford was denied. Well, Hartford's not in it, and I'm asking about vis-a-vis WorldCom right now. Ignore Hartford completely in answering this question. What factual disputes are there that should be returned to the district court, even assuming that there should not have been a dismissal on the basis that there was? Boy, that's a hard question to answer because the issues I have at this point is basically a legal dispute as to relevant facts here. I'm sorry, but the question is, assuming we agree with you that they should be a party, now the question is what to do with the case. It either goes back to the district court to make factual findings, or it stays with us if, in fact, the district court has made the appropriate factual findings. Or there are no factual disputes. Or there are no factual disputes, and we then take a look at it and say, well, it's a matter of law one way or the other. Yes. What are the facts? I guess the question is, what are the factual disputes you have to identify? Right. The factual disputes, again, I don't mean to confuse you, but it's just in the nature of ERISA itself, which could be remarkably confusing. Well, if you answer that question, that would really help. Because I hate to leave oral argument and be more confused than when I came in. Okay? That's not good. All right. So just, that's what we need to know. Yes. Again, I must apologize, but that's, I think, the nature of somewhat of ERISA at this stage. The, it's a legal question. Okay. So it's not a factual question. It's not only a legal question. Okay. So do you agree that there's no question about what the policies say? The ones we have in the record are the relevant policies, and they are what they are. And that his dates of treatment and his condition are what they are. In other words, that those underlying facts are not disputed. Is that what I'm hearing you saying? The basic facts are not disputed, except I believe there was a dispute as to whether he was working there previously and he continued and he was out on disability and then returned. So there's also, I guess it's a legal question. Are you disputing what happened between you, or are you disputing the legal effect of what happened? In other words, he worked for X number of days, or is that truly a factual dispute? The Court described it as a factual dispute. I tend to agree with you that it's. I'm asking a question. There's nothing to agree with. Boy. Is there a factual dispute on his dates of employment and the nature of his employment, or is that an agreed fact? That's the grounds on which the Court denied summary judgment as to Hartford. I agree with you it's a legal issue. Okay. That's my difficulty in answering your question. Okay. And I don't mean to do that to you. My colleagues have any further questions? I see. Thank you. Thank you very much. I appreciate it. Thank you. The case just argued is submitted. If I might have 10 seconds, Your Honor, just to ask five questions of the record. No, sir, rebuttal. We have the record, and we'll look through it all. Thank you. Thank you very much.
judges: Graber, Callahan, Breyer